UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA         : Criminal No. 08 CRIM 335

v.                               : Filed:

AARON S. WEINER                  : Violation:   18 U.S.C. § 371

                                 :

              Defendant.
------------------------------x

## INFORMATION

The United States of America, acting through its attorneys, charges:

1. Aaron S. Weiner ("Weiner") is hereby made a defendant on the charge stated below.

### CONSPIRACY
### (18 U.S.C. § 371)

#### I. THE RELEVANT PARTIES AND ENTITIES

During the period covered by this Count:

2. Weiner resided in Meadowbrook, Pennsylvania.

3. Weiner was the 100% owner of Aaron Weiner Construction, Inc. ("AWC").

4. AWC was a Pennsylvania corporation located in Meadowbrook, Pennsylvania, which was engaged in the business of providing general construction contracting services primarily to private residences in and around Philadelphia, Pennsylvania.

5. "CC-1" was a co-conspirator who was an officer of two corporations that

provided construction services and asbestos removal services to New York Presbyterian Hospital ("NYPH"). These corporations were located in New York City, New York and Philadelphia, Pennsylvania, respectively.

6.  "CC-2" was a co-conspirator who was a senior purchasing official at NYPH's uptown facility located at 627 West 165th Street, New York, New York, who participated in the selection of the vendors to perform construction services and asbestos removal services for NYPH. CC-2 created a shell company ("Vendor 1") with his mother as the designated owner.

7.  Whenever in this Count reference is made to any act, deed, or transaction of any corporation, such allegation shall be deemed to mean that the corporation engaged in such act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

8.  Various other persons and business entities, not made defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

## II. DESCRIPTION OF THE OFFENSE

9.  From at least as early as June 2004 and continuing until on or about March 31, 2005, the exact dates being unknown to the United States, in the Southern District of New York and elsewhere, Weiner and his co-conspirators, unlawfully, willfully, and

2

knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, to wit, to violate Title 18, United States Code, Sections 1343 and 1346, in violation of Title 18, United States Code, Section 371.

10. It was a part and object of the conspiracy that Weiner and his co-conspirators, having devised and intending to devise a scheme and artifice to defraud NYPH, to obtain money and property from NYPH by means of false and fraudulent pretenses, representations, and promises, and to deprive NYPH of its intangible right to the honest services of its employees, unlawfully, willfully, and knowingly, for the purpose of executing such scheme and artifice did transmit and cause to be transmitted in interstate commerce by means of wire communications certain writings, signs, signals and sounds, to wit, to violate Title 18, United States Code, Sections 1343 and 1346, in violation of Title 18, United States Code, Section 371.

### III. THE MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

11. In and around June 2004, CC-1 told Weiner he would be paid to purportedly supervise Vendor 1 on work being performed at a hospital in New York City. Weiner understood that in fact there was no work that was required to be done by him and Vendor 1 at the hospital in New York City or elsewhere. Weiner also understood that these

3

payments would be funneled through AWC to CC-2 in return for work awarded by CC-2 to CC-1 at a hospital in New York City.

12. From at least as early as June 2004 and continuing until on or about March 31, 2005, Weiner agreed to assist CC-1 in making kickback payments to CC-2 by transferring funds received by AWC from CC-1 to Vendor 1 for the benefit of CC-2. The kickback payments totaled approximately $1,010,000. In addition, AWC received approximately $50,500 for agreeing to assist CC-1 in the kickback scheme.

13. In and around June 2004, in order to conceal the true source of the kickback payments from CC-1 to CC-2, CC-1 instructed Weiner to give to CC-1 eight AWC postdated checks made out to Vendor 1 totaling $650,000. Weiner hand delivered these AWC checks to CC-1 and understood that CC-1 would provide them to Vendor 1. Each time CC-2 deposited one of the eight AWC checks, CC-1 reimbursed Weiner and AWC in substantially the same amount via wire transfer from a corporate bank account controlled by CC-1.

14. In and around January 2005, in order to conceal the true source of the kickback payments from CC-1 to C-2, CC-1 instructed Weiner to give to CC-1 five post-dated AWC checks made out to Vendor 1 totaling $360,000. Weiner hand delivered these AWC checks to CC-1 and understood that CC-1 would provide them to Vendor 1. Each time CC-2 deposited one of the five AWC checks, CC-1 reimbursed Weiner and AWC in substantially the same amount via wire transfers and in one instance a check from a

corporate bank account controlled by CC-1.

15. At no time did Weiner or his co-conspirators disclose to NYPH that payments were made for the benefit of CC-2 to Vendor 1. All such payments were made without the knowledge or approval of NYPH, and in violation of CC-2's duty of loyalty to NYPH.

## IV. OVERT ACTS

16. In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendant and others known and unknown, committed the following overt acts, among others, in the Southern District of New York, and elsewhere:

| Amount Defendant received from CC-1 | On or about date wire transfer or check to Defendant from CC-1 | On or about date CC-2 deposited check from Defendant to Vendor 1 | Amount Defendant distributed to Vendor 1 |
|---|---|---|---|
| $70,000 | 6/25/2004 (wire) | 6/25/2004 | $70,000 |
| $80,000 | 7/02 2004 (wire) | 6/30/2004 | $80,000 |
| $105,000 | 7/14/2004 (wire) | 7/10/2004 | $105,000 |
| $95,000 | 7/20/2004 (wire) | 7/20/2004 | $95,000 |
| $98,500 | 8/11/2004 (wire) | 8/10/2004 | $98,500 |
| $101,500 | 8/23/2004 (wire) | 8/20/2004 | $101,500 |
| $48,500 | 9/15/2004 (wire) | 9/15/2004 | $48,500 |
| $51,500 | 9/27/2004 (wire) | 9/25/2004 | $51,500 |
| $76,500 | 2/01/2005 (check) | 1/31/2005 | $58,500 |
| $70,000 | 2/11/2005 (wire) | 2/25/2005 | $70,000 |
| $70,000 | 2/25/2005 (wire) | 2/25/2005 | $70,000 |

5

| $90,000 | 3/18/2005 (wire) | 3/04/2005 | $90,000 |
| $71,500 | 3/31/2005 (wire) | 3/31/2005 | $71,500 |

## V. JURISDICTION AND VENUE

21.  The conspiracy charged in this count was devised and carried out, in part, in the Southern District of New York, within five years preceding the filing of this Information.

IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 371.

Dated:

_____
THOMAS O. BARNETT
Assistant Attorney General

_____
SCOTT D. HAMMOND
Deputy Assistant Attorney General

_____
MARC SIEGEL
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
MICHAEL J. GARCIA
United States Attorney
Southern District of New York

_____
RALPH T. GIORDANO
Chief, New York Office

_____
STEPHEN J. McCAHEY

_____
DEBRA C. BROOKES

_____
JEFFREY D. MARTINO
Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, New York 10278
(212) 264-0656